IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE MISKOVSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-08-123-HE |
| v. ) | |
| ) | |
| JUSTIN JONES, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. In his Complaint filed February 4, 2008, Plaintiff alleges that "[s]tarting on or about May 18, 2006, and continuing each month thereafter, the Oklahoma Department of Corrections has been unlawfully seizing, converting and disbusing [sic] all monies in Plaintiff's Prison draw account each month. And the unlawful and unauthorized disbursements are continuous and ongoing." Complaint, at 2. Plaintiff alleges that the deductions from his inmate draw account "have left Plaintiff destitute, and without any monies with which to purchase any necessities not provided by [Oklahoma Department of Corrections], such as hygeine [sic], clothing, pharmaceuticals or eye glasses." Complaint, at 3. Plaintiff also alleges that he is the only inmate whose entire draw account is being deducted by the Oklahoma Department of Corrections ("ODOC") "to pay court imposed fines and costs." Complaint, at 3. These deductions, Plaintiff asserts, have violated his constitutional rights under the Eighth Amendment's cruel and unusual punishment clause,

his equal protection rights under the Fourteenth Amendment, and his due process rights under the Fourteenth Amendment, for which he seeks declaratory and injunctive relief "ordering O.D.O.C. to stop unlawfully seizing all my monies" and he also seeks the " return to my prison draw account [of] all monies unlawfully seized." Complaint, at 3-5.

Defendant Jones has moved to dismiss the cause of action or, alternatively, for summary judgment. See Amended Motion to Dismiss/Motion for Summary Judgment and Brief in Support (Doc. # 30)("Defendant's Motion"). Plaintiff has responded to the motion. (Doc. # 45)("Plaintiff's Response"). A Special Report has been filed by ODOC consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978)("Special Report"). Defendant Jones has also filed a Supplement to the Amended Motion to Dismiss/Motion for Summary Judgment (Doc. # 43) and a reply (Doc. # 47).

I. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 1966. A *pro se* plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007); Haines v.

Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Twombly, 127 S.Ct at 1964-1965 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")(quotations and citations omitted); Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence

regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[1]

## II. Official Capacity

Defendant Jones has sought dismissal of the action or alternatively summary judgment on the basis that Plaintiff has sued Defendant Jones in both his official and individual capacities. However, Plaintiff has not asserted a § 1983 action seeking damages or equitable relief against Defendant Jones in his individual capacity. In his Complaint, Plaintiff states that he is suing Defendant Jones solely in his "official capacity." Complaint, at 1. Plaintiff's request for relief shows that he is seeking monetary relief from Defendant Jones' employer, ODOC, and not from Defendant Jones in his individual capacity. Therefore, Defendant's assertion of defenses to a § 1983 action against him in his individual capacity, including lack of personal participation and qualified immunity, will not be addressed herein.

Title 42 U.S.C. § 1983 provides a cause of action against a "person ... under color of any statute ... [who] subjects, or causes to be subjected, any citizen of the United States or other person ... to the deprivation of any rights, privileges or immunities secured by the Constitution." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege he or she was

---

[1] In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it allege facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

deprived of a right "secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Section 1983 does not create any substantive rights; rather, section 1983 provides a remedy for violations of rights guaranteed by federal statutes and the Constitution. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617-618 (1979).

Plaintiff's suit against Defendant Jones in his official capacity is an attempt to impose liability upon Defendant Jones' employer, the ODOC. See Meade v. Grubbs, 841 F.2d 1512, 1529 (10th Cir .1988)("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents").  Because ODOC is considered an agency, or arm, of the State of Oklahoma, Plaintiff is actually seeking to impose liability on the State itself. See Hafer v. Melo, 502 U.S. 21, 25 (1991)(suits against state officials in their official capacity are treated as suits against the State).  States and state officials sued in their official capacities are not "persons" within the meaning of § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Moreover, absent an express waiver, the Eleventh Amendment provides immunity for states in actions in federal court brought by citizens of that state.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985).  This immunity extends to suits against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to suits for damages and for retrospective declaratory and injunctive relief against state officials acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662-663, 668 (1974). Accordingly, Defendant's Motion to Dismiss the action against Defendant in his

official capacity should be granted to the extent the action seeks monetary damages and retrospective declaratory and injunctive relief against Defendant.

Plaintiff also seeks prospective injunctive relief in this action. This portion of Plaintiff's action against Defendant in his official capacity is not barred by the Eleventh Amendment. "'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). A litigant seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1154 (10th Cir. 2001).

III. Challenge to Sentence

Plaintiff is incarcerated serving consecutive 84-year, 7-year, and 2-year terms of imprisonment for his convictions for Racketeering, Indecent Exposure, and Attempted Perjury by Subornation entered in the District Court of Oklahoma County in State of Oklahoma v. Grover Lee Miskovsky, Case No. CF-1999-1787. At his sentencing conducted in the District Court of Oklahoma County on April 28, 2000, Plaintiff was sentenced to the above-described terms of imprisonment and also ordered to pay a fine of $500.00, a

$21,000.00 victim compensation assessment, and a mental health fee of $300.00. In the written summary of the sentencing proceeding, the trial court expressly ordered the ODOC "to use [Plaintiff's] entire draw account towards the payment of [his] fines, costs and fees until they are satisfied." Defendant's Motion, Ex 11. The Judgment and Sentence entered in Plaintiff's criminal case contains the same directive. Special Report, Att. 2.

Plaintiff appealed his convictions in Case No. CF-1999-1787. However, in his direct appeal Plaintiff did not challenge the trial court's directive that the fine, fees, and victim compensation assessment imposed at his sentencing be paid out of his inmate draw account. Defendant's Motion, Atts. 1, 3. The Oklahoma Court of Criminal Appeals affirmed Plaintiff's convictions and sentences. Miskovsky v. State, 31 P.3d 1054 (Okla. Crim. App. 2001).

In his Complaint, Plaintiff seeks equitable relief from Defendant Jones in his official capacity for the "unlawful[ ]" deductions by ODOC from his inmate draw account for payment of co-pays and the fine, victim compensation assessment, and mental health fee imposed at his sentencing. Although this allegation is somewhat unclear as to whether Plaintiff's focus is on the legality of the sentencing itself or on ODOC's actions in deducting money from Plaintiff's inmate draw account, Plaintiff has clarified his claims in his responsive pleading. In Plaintiff's response to Defendant's Motion, Plaintiff asserts that "[the trial court's] order directs ODOC to take Plaintiff's 'entire draw' account and such an order is void on its face." Plaintiff's Response, at 25. Plaintiff also "disputes that he has not contested the jurisdiction or power of [the trial court] to order ODOC to apply all money in

Plaintiff's draw account each month to [the victim compensation assessment,] fines and costs." Plaintiff's Response, at 25. See also Plaintiff's Response, at 51 ("Plaintiff has already demonstrated that [the trial court] had no jurisdiction to order the Plaintiff to pay his fines, fees, or cost during his incarceration."). The responsive pleading clearly shows that Plaintiff is attempting to use a 42 U.S.C. § 1983 action to collaterally attack his sentence.

Plaintiff's challenge to the validity of his sentence is barred by the doctrine established in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, or otherwise declared invalid, called into question by the issuance of a habeas writ, or expunged." Id. at 486-487. Plaintiff has not presented any evidence that his sentence has been overturned or ruled invalid by a state or federal court. Thus, Plaintiff's contention that the sentence imposed upon him, including the trial court's directive that the fine, fee, and victim compensation assessment be deducted from his inmate draw account, was invalid is barred by Heck. Accordingly, Defendant Jones' Motion to Dismiss Plaintiff's challenge to the validity of his sentence should be granted, and this claim should be dismissed without prejudice for failure to state a claim for relief.

IV. Eighth Amendment and Equal Protection Claims

In count one of the Complaint, Plaintiff alleges that the deductions by ODOC of "all money deposited in Plaintiff's Prison Draw account, including all gifts and all prison

employment pay" beginning May 18, 2006, violates the Eighth Amendment's protection against cruel and unusual punishment. In count two, Plaintiff alleges that the deductions by ODOC from Plaintiff's "prison draw account to pay court imposed fines and costs" denies Plaintiff equal protection in violation of the Fourteenth Amendment.

In Oklahoma, the Crime Victims Compensation Act, Okla. Stat. tit. 21, §142.1 to §142.20, provides for a victim compensation assessment at sentencing of up to $10,000.00 for each felony conviction. Okla. Stat. tit. 21, § 142.18 (A). Oklahoma law also provides that a fine of up to $10,000.00 may be ordered for each felony conviction. Okla. Stat. tit. 21, § 64. Additionally, Oklahoma law provides for the assessment of a fee for mental health treatment for sex offenders. Okla. Stat. tit. 22, § 991a(10).

By law in Oklahoma, ODOC is authorized to collect the wages and funds of an inmate, to apportion those wages and funds "in accordance with the law," to establish inmate accounts, and to establish procedures for inmates to draw funds from his or her account. Okla. Stat. tit. 57, § 549(A)(4). ODOC has the authority to determine what percentages of an inmate's wages and other funds will be apportioned to savings, for personal use, for victim compensation, for payments of costs and expenses of the inmate's criminal proceedings, and for other fees and expenses except that at least 20 % of the inmate's wages and funds must be placed in a mandatory savings account. Okla. Stat. tit. 57, § 549(A)(5). The money in an inmate's mandatory savings account can be used for certain court-imposed fees or costs. Id.

ODOC has established a policy for handling inmate funds. Special Report, Att. 11 ("Inmate Trust Funds," OP-120230, effective January 13, 2004). This policy provides that

"[m]edical and legal co-payments and restitution owed will be deducted from the inmate's draw account ... each time a deposit to the draw account is processed." Special Report, Att. 11, at 6-7.

It is not disputed in this case that at Plaintiff's sentencing the trial court ordered ODOC to collect and disburse Plaintiff's "entire draw account" toward the payment of the victim compensation assessment, fine, and mental health fee imposed as a part of Plaintiff's sentence. The trial court did not order that funds in Plaintiff's mandatory savings account be used to pay the assessment, fine, and fee. ODOC has not disbursed any funds in Plaintiff's mandatory savings account for the payment of the assessment, fine, and fee imposed at Plaintiff's sentencing. As of June 16, 2008, ODOC has disbursed $416.78 from Plaintiff's draw account to the Oklahoma County District Court pursuant to the trial court's sentencing directive. Additionally, ODOC has collected funds from Plaintiff's inmate draw account for the payment of Plaintiff's co-pays for medical, prescription, and legal services pursuant to ODOC's authority under Okla. Stat. tit. 57, § 549(A)(5) and ODOC OP-120230(I)(E).

It is also not disputed that because funds in Plaintiff's draw account are "being seized" for payment of his co-pays and for payment of the assessment, fine, and fee imposed at Plaintiff's sentencing, Plaintiff can receive state-issued hygiene items upon request. Plaintiff submitted a grievance concerning the deduction of funds from his inmate draw account on June 6, 2006, and the grievance was denied. On May 29, 2007, Plaintiff requested medical services, stating "glasses broken and prescription needs adjustment." Plaintiff's Response,

Ex. 2. The response to this request for medical services reflects that Plaintiff's eyes were examined on June 4, 2007, and that he was advised to bring in his eyeglasses for repair. Plaintiff submitted a grievance on July 18, 2007, seeking new eyeglasses as he stated his old eyeglasses were broken and he did not want "glued frames...." See Special Report, Ex. 9. In response to this grievance, Plaintiff was advised that his visual acuity on June 4, 2007, was 20/25 with his then-current prescription and he therefore was not entitled to a new vision examination under ODOC Policy OP-140132. Plaintiff received new state-issued eyeglasses on April 7, 2008. On June 16, 2008, Plaintiff had in his possession three eyeglasses, two cards of medicine, state-issued hygiene items, items only available for purchase in the prison canteen, and items of clothing in excess of the matrix for allowable items pursuant to ODOC Policy OP-030120.[2]

The only statutory limitation placed on ODOC's discretion in determining the apportionment of an inmate's funds in an inmate draw account is the deduction of 20 % of those funds to be placed in a mandatory savings account. Under these circumstances, and giving due deference to the agency's expertise in interpreting Okla. Stat. tit. 57, § 549, ODOC's interpretation of the statute as allowing the deduction of all of Plaintiff's funds in his inmate draw account for payment of the assessment, fine, fees, and for payment of his co-pays for prescription, medical, and legal services is reasonable. Chevron U.S.A., Inc. v.

---

[2]Although in his responsive pleading Plaintiff states that he "disputes" this statement of undisputed fact contained in Defendant's Motion, Plaintiff does not provide documentary evidence admissible at trial controverting this statement.

Natural Resources Defense Council, Inc.,467 U.S. 837, 843 (1984)("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").

The Supreme Court has recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Bell v. Wolfish, 441 U.S. 520, 545-546 (1979). "The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons," and "courts must exercise restraint in supervising the minutiae of prison life." McKune v. Lile, 536 U.S. 24, 37 (2002). Thus, this Court must accord deference to the ODOC prison authorities in their exercise of their expertise in managing the state prison system.

Plaintiff's Eighth Amendment claim is governed by the Supreme Court's decision in Farmer v. Brennan, 411 U.S. 825 (1994), in which the Court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. In a § 1983 action by a prisoner challenging the conditions of his confinement, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official was deliberately indifferent to the inmate's health or safety. Id. In explaining the term "deliberate indifference," the Court noted that "something more than mere negligence" is required to show deliberate indifference. Id. at 835-836. To be found liable under the Eighth Amendment, the prison official must "both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to support liability under the Eighth Amendment. Id. at 838.

Plaintiff contends that ODOC's action in deducting all of the funds from his inmate draw account for payment of the fine, fee, and assessment, as well as for his co-payments for medical, legal, and prescription services, has left him "destitute" and unable to purchase hygiene items, clothing, "pharmaceuticals," or eyeglasses not provided by the prison. However, it is not disputed that Plaintiff is entitled to receive and has received state-issued hygiene items. Plaintiff's allegation that he was denied unspecified hygiene items, clothing, and "pharmaceuticals" is conclusory. The allegation fails to show Plaintiff suffered any physical injury or that "an objectively serious harm to [Plaintiff's] future health" existed as a result of the alleged deprivation of unspecified hygiene items, clothing, or "pharmaceuticals." See Erickson v. Pardus, 198 Fed. Appx. 694, 700, 2006 WL 2640394, *6 (10th Cir. Sept. 14, 2006)(unpublished op.)(recognizing that in this circuit "an objectively serious harm to future health" may support Eighth Amendment claim).

With respect to his allegation that he was unable to purchase eyeglasses, Plaintiff clarifies this claim in his responsive pleading. In his response, Plaintiff asserts there was a delay in providing him with new state-issued eyeglasses. "Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Sealock v. Colo., 218 F.3d 1205, 1210 (10th Cir. 2000). The

unchallenged record shows Plaintiff's eyes were tested for "visual acuity" in June 2007, and, according to the response Plaintiff received to his grievance concerning the issue, the eye examination revealed his vision with the eyeglasses he had at that time was adequate under the prison's policy. Thus, Plaintiff's request for new eyeglasses was denied, although Plaintiff was advised he could replace his eyeglasses at his expense, with the cost charged to his trust fund account to be collected "when sufficient funds become available for payment." Special Report, Att. 9, at 8. Plaintiff received new state-issued eyeglasses in April 2008.

Plaintiff's contention that his previous eyeglasses prescription was not adequate asserts nothing more than a disagreement with the medical treatment he received. See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)("negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment"). Plaintiff provides no medical evidence that the alleged delay in providing him with new eyeglasses resulted in any harm to him. Because his vision was tested at his request, and his request for eyeglasses was denied based on the results of that test rather than his indigency, as Plaintiff suggests, a reasonable jury would not find that Plaintiff was denied medical care due to his indigency. Furthermore, a reasonable jury would not find that a substantial risk of serious harm existed as a result of any delay in providing Plaintiff new eyeglasses or that prison officials were deliberately indifferent to his need for new eyeglasses at state expense.

The equal protection clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal

protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although Plaintiff alleges that he is treated differently from other inmates, Plaintiff admits that he is the only inmate in ODOC custody with the same sentencing directive that all of the funds in his draw account be deducted toward payment of his fine, fee, and victim compensation assessment. Thus, there is no disparate treatment. Plaintiff "does not contend [he] is either a member of a suspect class or was denied a fundamental right," and he does not argue that the statute and prison policy interpreted by ODOC to allow the draw account deductions is not "rationally related to a legitimate government purpose." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 659 (10th Cir. 2006). Accordingly, Defendant Jones is entitled to summary judgment with respect to Plaintiff's Eighth Amendment and equal protection claims in counts one and two of the Complaint.

V. Due Process

Plaintiff asserts in count three that his due process rights have been denied by ODOC's deduction of all of the funds in his inmate draw account. However, as Plaintiff's only support for this argument he refers to Okla. Stat. tit. 57, § 549 and ODOC Policy OP-09131. ODOC Policy OP-09131 provides an "Offender Financial Responsibility Program" for offenders who have financial obligations in order to "encourage offenders to take responsibility for their actions and to make restitution to the victims of their crime(s) and/or to the community." Defendant's Motion, Ex. 13, at 1. Plaintiff's documentary evidence attached to his responsive pleading reflects that he chose not to participate in this voluntary

program. Plaintiff's Response, Ex. 7. The Oklahoma statute gives ODOC discretion in determining how much of an inmate's wages and funds to deduct toward payment of court-imposed financial obligations. Thus, Plaintiff has not shown that ODOC's actions with respect to the money in Plaintiff's inmate draw account conflict with either ODOC policy or state law.

Even if Plaintiff could show that ODOC's disbursement of all of the funds in his inmate draw account was an unauthorized, intentional deprivation of his property, Plaintiff has not alleged or shown that his postdeprivation remedies were inadequate. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Due process requires only "such procedural protections as the particular situation demands." Morrisey v. Brewer, 408 U.S. 471, 481 (1972). With respect to the co-payments for medical, legal, and prescription services, Plaintiff must sign a form requesting the disbursement of the fees from his account. Special Report, Att. 11 (ODOC Policy OP-120230(I)(E). Thus, Plaintiff was provided adequate predeprivation due process protections through the policy which gave him a meaningful procedure to prevent the deprivation. Additionally, ODOC provides Plaintiff postdeprivation remedies for an erroneous deduction from his draw account through the inmate grievance procedures. With respect to the deductions for payment of the victim compensation assessment, fine, and fee, it is undisputed that ODOC made these deductions based on the directive contained in Plaintiff's Judgment and Sentence. Plaintiff had a meaningful opportunity to challenge this deprivation during the sentencing proceeding and through the direct appeal and postconviction remedies provided for Oklahoma inmates. Because Plaintiff was afforded

both predeprivation notice and an opportunity to be heard, and postdeprivation remedies, he is not entitled to an additional hearing prior to the deduction of funds from his inmate draw account. Moreover, the risk of erroneous deductions by ODOC is unlikely because the deductions [from Plaintiff's draw account] are routine and ministerial. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3rd Cir. 2000)(assessments and deductions from detainees' accounts for costs of incarceration "involve routine matters of accounting, with a low risk of error" and "essentially ministerial matters" as to which predeprivation proceedings were not constitutionally required).

Moreover, "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" McKune, 536 U.S. at 37 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995). The fact that Plaintiff may not be able to spend discretionary funds as a result of (1) his sentence and (2) his voluntary requests for medical, prescription, and legal services does not constitute an "atypical and significant hardship" unlike the conditions existing for other ODOC inmates who incur similar financial obligations. A reasonable jury would not find in favor of Plaintiff on his claim of a due process deprivation, and Defendant is entitled to summary judgment with respect to this claim in count three of the Complaint.

Plaintiff has not shown a substantial likelihood of success on the merits of his Eighth Amendment, equal protection, or due process claims. Therefore, Defendant Jones is entitled to summary judgment concerning Plaintiff's demand for injunctive relief .

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant's Amended Motion to Dismiss/Motion for Summary Judgment (Doc. # 30) be GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) in part and Fed. R. Civ. P. 56 in part, as set forth above. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by ___February 3rd___, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___14th___ day of ___January___, 2009.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE