IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GROVER MISKOVSKY,                    )
                                     )
                Plaintiff,           )
                                     )
                                     )      CIV-08-123-HE
v.                                   )
                                     )
JUSTIN JONES, et al.,                )
                                     )
                Defendants.          )

FOURTH SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 alleging constitutional deprivations.[1]  Before the undersigned are former Defendant Jones' Motion to Dismiss or, alternatively, Motion for Summary Judgment (Doc. # 149) and Defendants Rabon and Anderson's Motion to Dismiss or, alternatively, Motion for Summary Judgment (Doc. # 179).  Plaintiff has responded to these Motions. (Docs. # 181, 193).

I. Background

In a jury trial conducted in the District Court of Oklahoma County, Plaintiff, a former Oklahoma City lawyer, was convicted of Racketeering, Indecent Exposure, and Attempted

_____

[1]The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

1

Perjury by Subornation, Case No. CF-1999-1787.   Consistent with the jury's recommendation, Oklahoma County District Court Judge Gray sentenced him to consecutive terms of imprisonment of 84 years, 7 years, and 2 years, respectively.

In the judgment and sentence entered in the criminal case on May 10, 2000, Judge Gray also ordered that Plaintiff pay a total of $21,800.00 in fines, compensation to victims, and costs, and ordered in the judgment that "the Department of Corrections is to use the entire draw account of this defendant towards the payment of fines, costs and fees until all are satisfied." Special Report (Doc. # 17), Ex. 2, at 2. Plaintiff did not challenge the sentencing directive in his appeal.   Plaintiff's convictions and sentences were affirmed on appeal. Miskovsky v. State, 31 P.3d 1054 (Okla. Crim. App. 2001).

During his pretrial detention in the Oklahoma County Detention Center and following his incarceration, Plaintiff filed multiple actions in state court and in this Court naming Judge Gray as a defendant.[2]   In each of these actions, Plaintiff's claims against Judge Gray were dismissed. See Defendant Jones' Motion to Dismiss/Motion for Summary Judgment (Doc. # 79), Ex. 4 (Order dismissing Judge Gray, Miskovsky v. Gray, Case No. CJ-2003-2490, Oklahoma County District Court); Miskovsky v. Gray, Case No. CIV-00-403-HE (W.D. Okla. July 18, 2000)(Russell, D.J.)(Order dismissing action against Judge Gray); Miskovsky

---

[2]The Court takes judicial notice of its records.  See State Farm Mut. Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008)(recognizing courts may take judicial notice of documents from the public record); St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

v. Gray, Case No. CIV-02-1684-HE (W.D. Okla. May 30, 2003)(Heaton, D.J.)(Order dismissing action against Judge Gray).

In Plaintiff's original Complaint filed February 4, 2008, Plaintiff sued Defendant Jones in his official capacity as the Director of the Oklahoma Department of Corrections ("ODOC").  Complaint (Doc. # 1). At that time, Plaintiff was incarcerated at the James Crabtree Correctional Center ("JCCC").  Plaintiff alleged that ODOC's remittance of his entire draw account to the Oklahoma County Court Clerk to pay his fines and court costs, consistent with the sentencing directive in the judgment and sentence, violated the Eighth Amendment's prohibition on cruel and unusual punishment because the remittance "left Plaintiff destitute and without any monies with which to purchase any necessities not provided by the ODOC . . . ." Complaint (Doc. # 1), at 3.  Plaintiff also alleged a violation of his Fourteenth Amendment right to equal protection because "[n]o other inmate, similarly situated, is being subjected to the unauthorized seizure [and remittance] of all money in their prison draw account to pay court imposed fines and costs." Complaint (Doc. # 1), at 3. Finally, Plaintiff alleged that his due process rights under the Fourteenth Amendment were being violated because ODOC was "prohibited from taking all monies deposited in his draw account" under ODOC policies and state law. Complaint (Doc. # 1), at 4.  As relief, Plaintiff demanded that the Court issue an injunction directing ODOC "to stop unlawfully seizing all [of Plaintiff's] monies" and "to return to [his] prison draw account all monies unlawfully seized." Complaint (Doc. # 1, at 5).  Defendant Jones moved to dismiss the action or, alternatively, for summary judgment.  (Doc. # 30).  Plaintiff responded to the motion. (Doc.

# 45).

As directed by the Court, Defendant Jones also filed a Special Report (Doc. # 17)  of ODOC's investigation of Plaintiff's claims. See Martinez v. Aaron, 570 F.2d 317, 319-320 (10th Cir. 1978). The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

On November 19, 2008, Plaintiff filed a 60-page amended complaint. (Doc. # 44). Twenty-six exhibits comprising 180 pages were attached to the amended complaint.  The following day, the undersigned ordered the amended complaint stricken from the record because it was not completed on the court-approved form. (Doc. # 46)(Order Striking Pleading(s)).

On December 16, 2008, Plaintiff filed a notice of change of address indicating he had been transferred from JCCC to Mack Alfred Correctional Center ("MACC"). (Doc. # 48). In a Report and Recommendation entered January 14, 2009, the undersigned recommended that the Court dismiss Plaintiff's claims against Defendant Jones in his official capacity on sovereign immunity grounds as to Plaintiff's claims seeking damages and retrospective declaratory and injunctive relief.  The undersigned further recommended that Plaintiff's claims challenging his sentences be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6). Finally, the undersigned recommended that summary judgment be entered in favor of Defendant Jones pursuant to Fed.R.Civ.P. 56 as to Plaintiff's constitutional claims related to ODOC's deduction of his inmate draw account funds and remittance of those funds to the Oklahoma County Court Clerk consistent with the sentencing directive in the Oklahoma

4

County judgment and sentence.  Report and Recommendation (Doc. # 49).  Plaintiff filed a voluminous objection (76 pages with 393 pages of exhibits) to the Report and Recommendation. (Doc. # 65).  In a 44-page motion, Plaintiff also requested leave to file an amended complaint. (Doc. # 59).

In an Order entered July 24, 2009, United States District Judge Heaton adopted the Report and Recommendation.  Judge Heaton dismissed without prejudice Plaintiff's claims challenging the validity of his sentence as premature under the doctrine established in Heck v. Humphrey, 512 U.S. 477 (1994).  Judge Heaton also granted summary judgment in favor of Defendant Jones with respect to Plaintiff's Eighth Amendment, equal protection, and due process claims stemming from the sentencing directive in the Oklahoma County judgment and sentence.  However, in light of Plaintiff's request for leave to file an amended complaint District Judge Heaton granted Plaintiff leave to file an amended complaint limited to "other claims arising out of the same underlying circumstances and which are not inconsistent with the disposition of claims effected by this order." Order (Doc. # 72).

In an 80-page Amended Complaint filed August 31, 2009, Plaintiff named nine Defendants, including Defendant Jones, a "John Doe," six additional ODOC officials, and Judge Gray. (Doc. # 77).   In the Amended Complaint, Plaintiff reasserted his previous claims of constitutional deprivations and also added a number of new claims.

The undersigned recommended dismissal of the claims asserted in the Amended Complaint on the grounds that (1) Plaintiff had raised the same grounds that were previously resolved and (2) the new grounds raised by Plaintiff failed to state a viable claim for relief.

In an Order entered July 30, 2010, District Judge Heaton dismissed all of the claims asserted in the Amended Complaint. (Doc. # 108). Plaintiff appealed this decision. On August 30, 2011, the Tenth Circuit Court of Appeals affirmed this Court's decision granting summary judgment with respect to Plaintiff's Eighth Amendment claim and his § 1983 claim concerning ODOC's disbursement of funds from his draw account to pay his court costs and fines consistent with the Oklahoma County judgment and sentence. Miskovsky v. Jones, 437 Fed.Appx. 707 (10th Cir. 2011). The court also affirmed the dismissal of Plaintiff's claim asserted in the Amended Complaint that Defendants retaliated against him for bringing lawsuits by interfering with his legal mail. The court reversed this Court's dismissal of Plaintiff's claims that Defendants Gray, Anderson, and Rabon had entered into a conspiracy to violate Plaintiff's constitutional rights and had retaliated against him by transferring him to a more dangerous prison.

In light of the Tenth Circuit's decision, the only remaining § 1983 claims in this action are: Plaintiff's claim that his transfer from JCCC to MACC in December 2008 was unconstitutional retaliation by Defendants Anderson, Rabon, and Gray for two pleadings Plaintiff filed in federal court; and Plaintiff's claim that the above-described transfer was the result of a conspiracy between Defendants Anderson, Rabon, and Gray "to transfer [Plaintiff] to an unsuitable prison in retaliation for his filing two pleadings that allegedly angered Anderson, Rabon, and Judge Gray." Id. Because the court reversed the dismissal of two of Plaintiff's federal claims, the appellate court also set aside the dismissal of Plaintiff's supplemental state-law claims and expressly found that this reversal did not foreclose a future

dismissal of those supplemental claims under 28 U.S.C. § 1367©.  Id.

Following the Tenth Circuit's decision, the matter was again referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).  In a Third Supplemental Report and Recommendation, the undersigned recommended that Plaintiff's cause of action against former Judge Gray, who is now deceased, be dismissed with prejudice pursuant to Fed.R.Civ.P. 25(a). (Doc. # 197).  Plaintiff did not object to this recommendation.

Defendants Jones, Anderson, and Rabon have filed motions to dismiss or, alternatively, for summary judgment with respect to Plaintiff's remaining claims, and Plaintiff has responded to these motions.  Defendants have also filed a joint reply to Plaintiff's responses.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

7

A *pro se* plaintiff's complaint must be broadly construed under this standard. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). <u>See</u> <u>Whitney</u> <u>v. New Mexico</u>, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. <u>Hall</u>, 935 F.2d at 1112.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. <u>Burke</u> <u>v. Utah Transit Auth. & Local</u>, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), <u>cert.</u> <u>denied</u>, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." <u>Id</u>. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." <u>Burke</u>, 462 U.S. at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations

omitted).

III. Defendant Jones

All of Plaintiff's federal claims against Defendant Jones have previously been

resolved in this matter.  However, with respect to Plaintiff's remaining § 1983 claims,

Defendant Jones seeks his dismissal from the action or summary judgment on the bases, *inter*

*alia*, of Eleventh Amendment immunity as to any official capacity claims and Plaintiff's

failure to allege the requisite personal participation as to any individual capacity claims.

Plaintiff specifically alleges in his Amended Complaint that Defendants Anderson and

Rabon ordered him transferred from JCCC to MACC on December 4, 2008. Amended

Complaint (Doc. # 77), at 8. When he arrived at MACC, he asked the duty officer why he

had been transferred to MACC when it was locked down for security reasons and he had

been "a model prisoner" at JCCC. Id. The officer allegedly responded, "You really pissed

off a Judge." Id.  He alleges that the transfer by Anderson and Rabon was the result of a

conspiracy between Anderson, Rabon, and Gray to retaliate against Plaintiff for filing

"Plaintiff's 'Response to Defendant's Motion to Dismiss/Motion for Summary Judgment,'

wherein he cited their continuing bad acts in furtherance of their conspiracy to violate

Plaintiff's Constitutional rights to due process and equal protection, and for filing his First

Amended Civil Rights Petition against Ron Anderson and Jim Rabon for conspiring with

Judge Twyla Mason Gray to carry out a campaign of harassment and retaliation.  And that

'But for' exercising his First Amendment right to access the courts for relief from abuse of his constitutional right to equal protection and due process activity, Defendants would not have ordered him to be transferred to MACC." Id., at 9.   Plaintiff alleges that he was informed by a prison guard following his transfer "that it was common knowledge, prior to Plaintiff's transfer, that MACC was a more dangerous prison than JCCC . . . ." Id.

It is these allegations, and only these allegations, that the Tenth Circuit Court of Appeals found were sufficient to state § 1983 retaliation and conspiracy claims. See Miskovsky v. Jones, 437 Fed.Appx. at 713-714 (finding that the amended complaint asserts that "Anderson and Rabon transferred him in retaliation for his filing two pleadings on November 19, 2008, that described their behavior in relation to his draw account and alleged that they were conspiring with Judge Gray to harass him" and that the amended "complaint adequately alleges a conspiracy among THOSE THREE DEFENDANTS")(emphasis added).

Plaintiff incorrectly asserts in his responsive pleadings that the Tenth Circuit Court of Appeals found he had stated a claim of conspiracy and retaliatory transfer involving Defendant Rabon, Anderson, and Jones. Response (Doc. # 181), at 26; Response (Doc. #193), at 31. However, this assertion is contrary to the record.[3] The remaining § 1983 claims of conspiracy and retaliatory transfer before this Court, as alleged by Plaintiff in his Amended Complaint and as found by the Tenth Circuit Court of Appeals, do not involve

---

[3]To the extent Plaintiff is attempting to change the factual basis of his § 1983 retaliation and conspiracy claims alleged in his Amended Complaint or assert new claims not raised in his Amended Complaint, the Court should decline to consider this belated attempt to further amend his claims. See United States v. Wayne, 591 F.3d 1326, 1336 n. 9 (10th Cir. 2010)(declining to address an argument raised for the first time in a reply brief).

Defendant Jones.   Accordingly, Defendant Jones' Motion to Dismiss or, alternatively, Motion for Summary Judgment (Doc. #149) should be DENIED as MOOT with respect to the remaining federal claims before the Court.

IV. Plaintiff's Submission of Allegedly Falsified Affidavits

In their Reply brief (Doc. # 205) Defendants Jones, Anderson, and Rabon[4] have raised the issue of Plaintiff's submission of allegedly false affidavits with his responsive pleadings. Plaintiff's 47-page response to Defendant Jones' dispositive motion is supplemented with 827 pages of exhibits. Response (Doc. # 181).  With Plaintiff's 60-page response to Defendants Anderson and Rabon's dispositive motion, Plaintiff has submitted 840 pages of exhibits. Response (Doc. # 193).   Several affidavits submitted as exhibits by Plaintiff with his responsive pleadings indicate they were notarized by Ms. Dianna Eldridge on June 15, 2012. See Response (Doc. # 181), att. 8, Ex. 55, at 2-53; Response (Doc. # 193), att. 9, Ex. 55, at 15-64, including a handwritten purported affidavit dated August 3, 2008, Response, (Doc. # 181), att. 8, Ex. 55, at 47-49; Response (Doc. # 193), att. 9, Ex. 55, at 58-60, the purported affidavit dated August 26, 2008, Response (Doc. # 193), att. 9, Ex. 55, at 52-54, the purported affidavits submitted by Plaintiff dated October 3, 2008, and signed by another inmate, John Duvoll, Response (Doc. # 181), att. 8, Ex. 55, at 41-43 and 44-46; Response (Doc. # 193), att. 9, Ex. 55, at 55-57, and several undated purported affidavits submitted by Plaintiff, Response (Doc. # 181), att. 8, Ex. 55; Response (Doc. # 193), att. 9, Ex. 55 and att.

---

[4]Although Defendant Jones joined in this Reply, the § 1983 claims against former Defendant Jones have been resolved.

11, Ex. 72, at 88-95.  Most of these affidavits bear indicia of falsity, including the fact that Plaintiff's signature and notarization appear on a completely separate page from the text of the affidavits, the fact that the separate signature and notarization page is typewritten with a different font from that employed in the body of the affidavit or the fact that the separate signature and notarization pages are typewritten whereas the body of the affidavit is handwritten, and an identical handwritten correction of a typographical error on the notarization.  Only one of these affidavits presented by Plaintiff bears his signature and a notarization in a manner that appears to have been typewritten using the same font as the font used in the body of the affidavit. See Response (Doc. # 181), Ex. 55, at 11-13; Response (Doc. # 193), Ex. 55, at 24-26.

In support of their argument that the majority of these affidavits (and Defendants do not submit which of the affidavits was validly signed and notarized) have been falsified by Plaintiff, Defendants assert that Ms. Eldridge, in her capacity as MACC's law librarian, notarized one affidavit bearing Plaintiff's signature on June 15, 2012.  In her affidavit attached to this pleading, Ms. Eldridge avers that on June 15, 2012, she notarized one affidavit for Plaintiff and that she did not notarize any other affidavit purportedly dated June 15, 2012. Defendants' Reply (Doc. # 205), Ex. 37 (att. 1).

Although the allegations made by Defendants are serious, the purported affidavits submitted by Plaintiff with his responsive pleadings which are challenged by Defendants, Response (Doc. # 181), att. 9, Ex. 55, at 1-53; Response (Doc. # 193), att. 8, Ex. 55, at 15- and Ex. 72) do not provide evidence of a material, disputed fact related to the remaining

12

issues before the Court.  Accordingly, the undersigned has not considered the purported affidavits in resolving the present dispositive motions, and it is not necessary to consider the legal sufficiency of those purported affidavits.

V. Undisputed, Material Facts

        With respect to the remaining § 1983 claims before the Court, the following material facts are not disputed by the parties.

1.  Plaintiff was received in ODOC custody on September 27, 2000, pursuant to a judgment and sentence entered May 10, 2000, in State v. Miskovsky, Case No. CF-99-1787.  Plaintiff was convicted in Case No. CF-99-1787 of the offenses of Racketeering, Indecent Exposure, and Attempted Perjury by Subornation, and sentenced to serve 84 years of imprisonment, 7 years of imprisonment, and 2 years of imprisonment, respectively.

2. On October 31, 2008, JCCC Warden Parker requested in writing on a Facility Assignment Form that Plaintiff be administratively reassigned to another facility because he was becoming too adversarial with prison staff.[5]

_____

        [5]In his responsive pleading, Plaintiff "disputes" this statement included in Defendants Rabon and Anderson's Motion, but Plaintiff has not provided documentary evidence demonstrating a material, disputed issue of fact concerning this statement. Response (Doc. # 193), at 33. Moreover, Defendants Anderson and Rabon have submitted the affidavit of a JCCC official, Ms. Guffy, with their Reply.  In this affidavit, Ms. Guffy avers that "[o]n October 9, 2008, I filed an incident report regarding [Plaintiff's] aggressive and argumentative conduct towards me and JCCC law librarian [Ms.] Harris. . . . As a result of this incident, I asked the JCCC Warden David Parker to transfer [Plaintiff] to another facility.  I was concerned that his behavior in the library was escalating and he was intimidating my librarian.  Warden Parker transferred Mr. Miskovsky as a result of my request." Reply (Doc. # 205), att. 4, Ex. 40, at 1.  Ms. Guffy's averments are consistent with JCCC Warden Parker's handwritten statement on the Facility Assignment Form requesting an administrative transfer for Plaintiff to another facility because he was "becoming to[o] adversarial with staff." Defendants Anderson and Rabon's Motion (Doc. # 179), att. 20, Ex. 31.

3.   Warden Parker's administrative transfer request was submitted to and approved by JCCC's Facility Classification Committee on November 7, 2008, and the Committee's recommendation was reviewed and approved by Warden Parker on November 12, 2008.[6]

4. The administrative transfer request was received by ODOC's Classification and Population division on November 17, 2008, and Plaintiff's reassignment to MACC was approved by ODOC's Population Officer Smith on November 24, 2008.[7]

5. Pursuant to ODOC Policy OP-060204, entitled "Inmate Transfers" (effective October 26, 2006), ODOC's Classification and Population Office located in Lexington, Oklahoma, determines whether and when an inmate in ODOC custody is transferred to another facility.[8]

6. Both JCCC and MACC are medium security facilities.  Thus, Plaintiff was transferred from one medium security facility to another medium security facility.

7. Plaintiff's transfer from JCCC to MACC complied with ODOC Policy OP-060204.[9]

8. Plaintiff's Response to Defendant's Motion to Dismiss (Doc. # 45) and Plaintiff's First Amended Petition (Doc. # 44) were filed in this action on November 19, 2008, almost three weeks after the date that JCCC Warden Parker initiated Plaintiff's transfer by requesting an administrative transfer of Plaintiff via a written Facility Assignment Form.

9. Defendants Anderson, Rabon, and Gray were not involved in Plaintiff's administrative

---

[6]Ibid.

[7]Ibid.

[8]Ibid.

[9]Ibid.

transfer from JCCC to MACC.[10]

VI. Conspiracy and Retaliation

Plaintiff specifically alleges in his Amended Complaint that Defendants Anderson and Rabon ordered him transferred from JCCC to MACC on December 4, 2008. Amended Complaint (Doc. # 77), at 8. According to Plaintiff, when he arrived at MACC he asked the duty officer why he had been transferred to MACC when it was locked down for security reasons and he had been "a model prisoner" at JCCC. Id. The officer allegedly responded, "You really pissed off a Judge." Id.

He alleges that the transfer to MACC, "a more dangerous prison than JCCC," ordered by Anderson and Rabon was the result of a conspiracy between Anderson, Rabon, and Gray to retaliate against Plaintiff for filing his Response to Defendant's Motion to Dismiss/Motion for Summary Judgment and his First Amended Complaint in this action on November 19, 2008, in which he alleged that Anderson and Rabon conspired with Gray to harass him. Id. at 9.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010)(brackets and quotation marks omitted).   In this circuit,

> [g]overnment retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's

---

[10]Ibid.

actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007).

As the Tenth Circuit explained in the previous appeal filed by Plaintiff herein, these allegations in Plaintiff's Amended Complaint assert the requisite "three elements of a retaliation claim" recognized in Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007). First, the "constitutionally protected activity was filing pleadings in federal court." Miskovsky, 437 Fed.Appx. at 713. Second, Plaintiff's "transfer to a more dangerous prison would chill a person of ordinary firmness from continuing to pursue the litigation." Id. Finally, "the allegation of retaliatory motive is supported by the 'close temporal proximity' - 15 days - between his filing the pleadings and his transfer to MACC." Id.

There is no dispute that Plaintiff filed two pleadings in this action on November 19, 2008. Turning to the second element of the unconstitutional retaliation claim, the undisputed facts show that Plaintiff was transferred on December 4, 2008, from one medium security facility to another medium security facility. With respect to the third element of retaliatory motive, the undisputed facts show that Plaintiff's transfer was initiated by JCCC Warden Parker via a written Facility Assignment Form on October 31, 2008, that Warden Parker's transfer request was reviewed by and approved by the appropriate administrative channels consistent with ODOC policy, including JCCC's Facility Classification Committee and ODOC's Population Office, and that the transfer decision was made by ODOC's Population

16

Officer Smith.

Moreover, although Plaintiff alleged in his Amended Complaint that MACC was a more dangerous facility than JCCC, he subsequently filed a motion in this action seeking an injunction to prevent ODOC officials from transferring him out of MACC. Motion for Temporary Injunction (Doc. # 182).  In this motion, Plaintiff stated that he did not want to be transferred to another prison. Id.  In a supplemental brief, Plaintiff asserted that he was in "excellent health," that his "health[,] safety and welfare" were being jeopardized by ODOC's plan to transfer older inmates to another facility, that he "had no problems with staff or the general population at MACC," and that there existed a "clear and present danger" that he would be transferred from MACC "to a more dangerous prison." Supplement to Motion for Temporary Injunction (Doc. # 189), at 4, 5, 7, 12.

"Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." Shero, 510 F.3d at 1200.  When applying this standard, the evidence is viewed in the light most favorable to the nonmoving party. Doe v. City of Albuquerque, 667 F.3d 1111, 1112 (10th Cir. 2012)(quotations and citation omitted).

Buried within the avalanche of evidentiary documents submitted by Plaintiff with his Response to Defendants Anderson and Rabon's dispositive motion is a 14-page affidavit in which Plaintiff avers that ODOC's inmate transfer policy was not followed by JCCC officials prior to his transfer. Response (Doc. # 193), att. 9, Ex. 55, at 1-14. However, the undisputed record shows, consistent with ODOC's policy concerning inmate transfers, that Plaintiff's

transfer was initiated by JCCC Warden Parker for the stated reason that Plaintiff was becoming adversarial with staff at the prison, that the transfer request was approved by JCCC's Facility Classification Committee, and that the transfer request was then submitted to and approved by ODOC's Population Office, where the decision was made to transfer Plaintiff to MACC, another medium security prison.

Plaintiff has failed to demonstrate a disputed issue of fact with respect to the essential element of his retaliation claim that the transfer was made to a more dangerous prison. Plaintiff's motion filed during the litigation of this case TO PREVENT HIS TRANSFER FROM MACC to another prison is completely contrary to his allegation in his Amended Complaint that MACC was a "more dangerous" facility than JCCC.

Because Plaintiff has not demonstrated a material issue of fact showing a constitutional violation, a reasonable jury would not find in favor of Plaintiff with respect to his § 1983 claim of conspiracy. See Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995)("In order to succeed on [a § 1983 conspiracy] claim, [a plaintiff] must prove both the existence of a conspiracy and the deprivation of a constitutional right."); Snell v. Tunnell, 920 F.2d 673, 701-702 (10th Cir. 1990)("[A] deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim[.]").  Accordingly, Defendants Anderson and Rabon are entitled to summary judgment with respect to Plaintiff's remaining unconstitutional retaliation and conspiracy claims.

VII. Motion for Sanctions and to Strike Affidavit

In a 15-page pleading filed October 12, 2012 (Doc. # 206), Plaintiff requests that the

18

Court "strike" the affidavit authored by Ms. Eldridge and also requests that the Court "impose sanctions against Attorney Kulmacz . . . .," including the denial of a motion for summary judgment and assessment of "costs" against the attorney.  Plaintiff's motion is frivolous and malicious and should be denied.

An affidavit authored by Ms. Eldridge is attached to the Reply brief filed by Defendants Anderson and Rabon.  As previously explained herein, in her affidavit Ms. Eldridge states that she is the law librarian at MACC and that on June 15, 2012, she notarized one single affidavit for Plaintiff, that Plaintiff executed a disbursement form requesting only one notarization and that she did not notarize a signature for a "John Duvall." Reply (Doc. # 205), Ex. 1.  As there is no procedural insufficiency in this affidavit, which bears a notary's signature and seal, or procedural insufficiency in any other affidavit presented with Defendants Anderson and Rabon's Reply brief, Plaintiff's motion seeking to "strike" the affidavit and  Plaintiff's further request that the Court "impose sanctions" against Defendants' attorney is baseless.  Thus, Plaintiff's motion (Doc. # 206) should be denied. In light of this recommendation, Defendants Anderson and Rabon's Motion to Strike Plaintiff's Request for Sanctions (Doc. # 207) should be denied as moot.

VIII. <u>Supplemental Jurisdiction</u>

To the extent Plaintiff has alleged in his Amended Complaint that Defendants Jones, Anderson and Rabon are liable to him for violations of Oklahoma law, there are no remaining federal claims in this case.  Under these circumstances, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law-based claims. 28 U.S.C.

19

§1367(c)(3).  See Brooks v. Gaenzle, 614 F.3d 1213, 1229-1230 (10th Cir. 2010)(recognizing that "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice")(internal brackets and quotation marks omitted); Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998)(recognizing "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").  Accordingly, Plaintiff's state law claims should be dismissed without prejudice.


RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant Jones' Motion to Dismiss/Motion for Summary Judgment (Doc. # 149) be DENIED as moot, that Defendants Anderson and Rabon's Motion for Summary Judgment (Doc. # 171) be GRANTED and that judgment issue in favor of Defendants Anderson and Rabon and against the Plaintiff.  It is further recommended that pursuant to  28 U.S.C. § 1367(c)(3) the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims and that Plaintiff's state law claims be DISMISSED WITHOUT PREJUDICE.  Finally, Plaintiff's Request to Strike and for Sanctions (Doc. #206) should be DENIED.  Defendants Anderson and Rabon's Request to Strike Plaintiff's Request for Sanctions (Doc. #207) should be DENIED as moot.

The parties are advised of their respective right to file an objection to this Fourth Supplemental Report and Recommendation with the Clerk of this Court by ___January 2nd, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely

object to this Fourth Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Fourth Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   10th   day of   December   , 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE